*R. R. Richards,* contra.

---

## ELBERTA PEACH COMPANY LIMITED *v.* GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY.

1. The petition set forth a cause of action for the failure of the defendant to furnish one car according to contract, and therefore should not have been dismissed on general demurrer.
2. Assignments of error not referred to in the brief of counsel for plaintiff in error will be considered as abandoned.

Argued June 18,—Decided December 24, 1909.

Action for damages. Before Judge Felton. Houston superior court. October 1, 1908.

The Elberta Peach Company Limited brought an action against the Georgia Southern and Florida Railway Company for its delay in furnishing cars to petitioner, in accordance with an alleged contract between the parties. The substance of the petition now material was as follows: The defendant undertook to furnish refrigerator cars to petitioner as soon as petitioner's peaches should be ready for shipment, upon notice to defendant by petitioner, and on July 1, 1907, Jewett, plaintiff's agent, received from Scott, defendant's master of trains, the following letter:

"Georgia Southern & Florida Railway Company. Transportation Department. Macon, Ga., July 1, 1907.

"Mr. Geo. B. Jewett, Macon, Ga.

"Dear Sir,—We are served with notice from the Fruit Growers Express people, that all orders for cars received after 6 p. m. will be accepted subject to delay in furnishing the cars. It is necessary to receive orders for iced cars before 6 p. m., in order to enable

these people to have sufficient time to ice cars and get 'them on morning trains. We would like to have as much advance notice on all orders for iced cars as possible, in order to enable us to furnish the cars at the time called for by you, if possible.

"Yours truly, F. W. Scott, Master of Trains."

"In accordance with the request made by said defendant in the foregoing letter, petitioner, on the morning of July 18th, 1907, requested of defendant, through F. W. Scott, its master of trains and person in charge of the placing of cars, one refrigerator car placed at Elberta on that day, and one refrigerator car the next morning; and in pursuance of petitioner's said request for said cars, the trainmaster of said defendant company immediately advised petitioner that a refrigerator car would be furnished on that day if possible; that no empty F. G. E. cars were in Macon that morning. Defendant later on the same day, through its trainmaster, notified petitioner that it would be unable to furnish iced cars that day (July 18), but stated that it would be in position to furnish all cars needed by noon the following day. . . Whereupon petitioner immediately notified defendant that the fruit was picked, packed, and on the platform, and that petitioner must have one car to-day and one to-morrow to move same, as the fruit was ripe. And on the morning of July 19th petitioner was notified by defendant, through its said trainmaster, that it would have plenty of cars by 6 p. m., and that it would forward two cars iced for Elberta on the first available train after cars are iced." Said cars were not sent on July 19, 1907, and were not furnished to petitioner until four o'clock Saturday afternoon, July 20, 1907; and during the delay petitioner repacked a number of crates with fresh peaches, amounting to as much as fifty bushels, taking out such peaches as had become overripe, in order to save as much loss as possible. "The fifty bushels of fresh peaches were worth $1.25 per bushel at Elberta, as the entire crop had been sold to Thomas P. Wallace of New York at $1.25 per crate, f. o. b. Elberta, Ga. The expense of gathering and repacking amounted to $6.21." Petitioner did everything in its power to get the cars in a reasonable time, and complied with the request of defendant in ordering said cars; and on account of the unnecessary delay and the failure of defendant to comply with its contract, petitioner has been damaged in the sum of $650.32, in consequence of the damaged condition of the peaches

when they arrived at New York, the point of destination. After ordering the cars, petitioner picked and packed .its peaches and placed them on the platform at the station of defendant company, ready for shipment. The peaches were in first-class condition when placed upon such platform, and the loss sustained was not by the fault of petitioner.

The petition was demurred to, generally and specially. The demurrers, except as to three of the special grounds, were sustained, and the petition dismissed. The plaintiff excepted.

*Martin & Morcock,* for plaintiff.

*John I. & J. E. Hall,* for defendant.

FISH, C. J.. (After stating the facts.)

It appears from the petition, that, "in accordance with the request made" by defendant upon plaintiff, in the letter of July 1, 1907, written and addressed to plaintiff's agent, Jewett, plaintiff, on the morning of the 18th of the same month, requested of defendant's master of trains at Macon, who wrote this letter for defendant, and who was in charge of the business of placing cars, to have one refrigerator car placed at Elberta on that day and another at the same place on the following day. In reply to this request of plaintiff, the master of trains immediately notified plaintiff that a car would be furnished that day, if possible, but that there were no empty Fruit Growers Express cars in Macon that morning. Later during the same day plaintiff was notified by the master of trains that defendant would be unable to furnish a car that day, but would be in position to furnish all cars needed by noon the following day. "Whereupon petitioner immediately notified defendant that the fruit was picked, packed, and on the platform, and that petitioner must have one car to-day and one to-morrow to move same, as the fruit was ripe." Do these allegations show the making of a contract between plaintiff and defendant? To consummate a contract there must, of course, be mutuality of assent to a certain definite proposition. Prior to the order given by plaintiff on July 18, defendant had notified plaintiff that the Fruit Growers Express had informed defendant that all orders for cars received after 6 p. m. would be accepted subject to delay in furnishing them, and that therefore it was necessary for defendant to receive orders for such cars before 6 p. m., to enable the Fruit Growers Express to have sufficient time to ice them and to get them on the morning

trains.    Nothing is urged in the petition against the validity of this notice, but, on the other hand, it seems clear that plaintiff accepted the terms of the notice as part of the agreement, and gave the order for the two cars in full recognition of the right of the defendant to require the notice; as it is alleged that plaintiff, on July 18, gave this order "in accordance with the request made" in defendant's letter of July 1, giving the notice in reference to furnishing refrigerator cars.    Plaintiff's order was for one car to be placed at Elberta on July 18, the same day the order was given, and another car to be placed at the same station on the morning of the following day.    Under the terms of the notice to be given the defendant, it was not bound to furnish a car on the same day it was ordered, and defendant did not agree to furnish a car on that day, but notified plaintiff that it would do so if possible, but there were no empty Fruit Growers Express cars in Macon that morning; and later in the day it notified plaintiff that defendant would be unable to furnish the car that day.    It is therefore obvious that defendant never agreed to furnish a car on the 18th of July, and that for a failure so to do plaintiff had no cause of action.    So much, however, can not be said in respect to the transaction as to the car ordered for the 19th of July.    In ordering the car for that day, plaintiff fully complied with the terms of defendant's notice.    The order was given before 6 p. m on the 18th of July, for a car to be furnished on the next day, and moreover the defendant accepted such order and agreed to place the car as ordered.    This it failed to do, and therefore plaintiff had a cause of action for defendant's breach of the contract.    It follows that the general demurrer to the petition should not have been sustained, in so far as damages were sought to be recovered for the delay of the defendant in furnishing the one car which it had agreed to place at Elberta on the 19th of July.

The question as to the measure of damages for such delay is not up for adjudication, as a special demurrer was sustained to the paragraph of the petition in which the damages were specifically set forth; and while error was assigned upon such ruling, no reference to it appears in the brief of counsel for plaintiff in error, and the point must therefore be considered as abandoned.    In one paragraph of the petition, however, which was not specially demurred to, it was alleged that by reason of defendant's delay in furnishing

the cars plaintiff had to repack the peaches, and in so doing used fifty bushels of fresh peaches, and the value thereof and the expense of repacking were set forth. And in another paragraph, not so demurred to, it was alleged: "On account of the unnecessary delay and negligence of said defendant company to furnish said cars and comply with its contract, petitioner has been damaged in the sum of $650.32 on account of the damaged condition of said peaches when said peaches arrived in New York, the point of destination." The brief of counsel for plaintiff in error does not refer to any assignment of error upon the rulings of the court sustaining special demurrers to the petition; and therefore we have not dealt with them further than they were necessarily involved in the brief of counsel for plaintiff in error in the discussion of the assignment of error upon the ruling sustaining the general demurrer. Inasmuch as the court erred in sustaining the general demurrer to the petition, to the extent above indicated, direction is given that the plaintiff be allowed by the court an opportunity to amend the petition to meet the special demurrers thereto.

*Judgment reversed, with direction. All the Justices concur.*